Rachana ARORA, D.M.D., Plaintiff,

v.

DENTAL HEALTH GROUP, P.A., a Florida corporation, d/b/a Great Expressions Dental Centers; and Raul V. Rangel, D.M.D., an individual, Defendants.

Case No. 9:11–cv–62641–DMM.

United States District Court, S.D. Florida.

Aug. 8, 2012.

Adam Jason Steinberg, Law Offices of Adam J. Steinberg, P.A., Coral Gables, FL, Dion J. Cassata, Dion Cassata, P.A., Fort Lauderdale, FL, for Plaintiff.

Carlos Bruno Castillo, Terrance Andrew Dee, Dibello, Lopez & Castillo, P.A., Coral Gables, FL, Jeffrey D. Wilson, Devaney Jacob Wilson, PLLC, Troy, MI, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DONALD M. MIDDLEBROOKS, District Judge.

THIS CAUSE comes before the Court upon Defendants' Motion for Summary Judgment ("Motion") (DE 36) filed on June 1, 2012. Plaintiff filed a Response (DE 42) to the Motion on July 3, 2012, to which Defendants filed a Reply (DE 44) on July 9, 2012. I have reviewed the matter and am advised in the premises.

## I. STATEMENT OF FACTS

Plaintiff Rachana Arora ("Plaintiff") filed this lawsuit on December 13, 2011 claiming that Defendants violated the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, by terminating her employment for having sought to exercise her rights under the FMLA. Plaintiff was employed by Defendant Dental Health Group ("DHG"). (DE 36 at 2). DHG is a professional association of licensed dentists in 66 offices throughout Florida. (*Id.*). Plaintiff started working for DHG in March 2009 as a full-time dentist in DHG's dental office in Coral Springs, Florida. (*Id.*). Under her employment agreement, either party could terminate employment at any time upon 30 days written notice. (*Id.*). In December 2010, Plaintiff's status changed from a full-time employee of DHG to part-time and she began solely working at DHG's Coral Springs office three days per week. (*Id.*). In January or February of 2011, Plaintiff notified her office manager that she was pregnant and would be taking FMLA leave approximately July 1, 2012. (*Id.* at 5). The parties dispute whether Plaintiff informed any DHG employees that she had requested FMLA leave. (*Id.* at 4, DE 42 at 5).

In February 2011, Defendant Raul Rangel ("Dr. Rangel") contends that he began to discover several instances of fraudulent entries made by Plaintiff in patient charts. (DE 36 at 4). Dr. Rangel asserts that he discovered three separate occasions where Plaintiff's patients were billed for services that were not actually performed. (*Id.* at 5–9). Plaintiff contests these allegations and states that she never entered any notations on patients charts for work she did not do. (DE 42 at 7–9). Defendants contend that after they discovered the third instance of Plaintiff's fraud on March 2, 2011, Dr. Brody made the decision to terminate Plaintiff's employment. (DE 36 at 10). Defendants then began looking for a replacement for Plaintiff, but kept her as an employee in the meantime. (*Id.* at 10–11). After making this termination decision, Dr. Rangel states that he discovered three more instances of Plaintiffs fraud. (*Id.* at 11–12). Defendants assert that they found a replacement for Plaintiff on May 2, 2011. (*Id.* at 12). The next day, Dr. Rangel met with Plaintiff to inform her of her termination due to Defendants' belief that she had committed billing fraud on several occasions. (*Id.*).

Plaintiff's Complaint contains two counts: one for interference in violation of the FMLA and another for retaliation in violation of the FMLA.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a district court's decision to grant summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue of material fact is genuine where the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *See*

*Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.1996) (quoting *Hairston v. Gainesville Sun Publ'g. Co.*, 9 F.3d 913, 919 (11th Cir.1993)). A district court's central inquiry when determining whether it should grant a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). After the parties have had adequate time to conduct discovery and a party files a motion for summary judgment, a district court must grant summary judgment against a party who fails to establish the existence of an element essential to his case that he bears the burden of proof on during trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of demonstrating to the court that the record does not contain any genuine issues of material fact to be determined at trial. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). Whether a fact is material or not is a question that requires the moving party to defer to substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Pursuant to Rule 56, a moving party may accompany its motion for summary judgment with supporting affidavits; however, the movant is not required to file any affidavits. *See* Fed.R.Civ.P. 56(a)-(b). That being said, a district court may not consider an unsworn statement when "determining the propriety of summary judgment." *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir.1980) (*citing Adickes v. S.H.*

*Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970)).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir.1995) (per curiam) (internal citation and quotations omitted). In addition, the dispute must have a "real basis in the record" in order to constitute a genuine dispute of fact. *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir.2002) (quoting *Mize*, 93 F.3d at 742) (internal quotations omitted). Thus, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1327 (11th Cir.2005).

While conclusions and unsupported facts alone are insufficient to oppose a summary judgment motion, a district court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir.1995) (citing *Dibrell Bros. Int'l., S.A. v. Banca Nazionale Del Lavoro*, 38 F.3d 1571, 1578 (11th Cir.1994) (per curiam)). In order to demonstrate a genuine issue, the party opposing entry of summary judgment must establish sufficient evidence upon which a jury could reasonably rule in his favor; therefore, a mere "scintilla of evidence" alone is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. If the party opposing summary judgment produces any evidence, a district court must accept it as true and draw "all justifiable inferences" in his favor. *See id.* at 255, 106 S.Ct. at 2513.

## III. DISCUSSION

■■■■ The FMLA creates two types of claims: interference claims, in which an employee asserts that her employer discriminated against her because she engaged in activity protected by the Act, and retaliation claims, in which an employee asserts that her employer discriminated against her because she engaged in activity protected by the Act. *See Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir.2001). To state a claim of interference, "an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." *Id.* at 1206–07 (citing *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1353–54 (11th Cir.2000)). "In contrast, to succeed on a retaliation claim, an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." *Id.* at 1207. As stated previously, Plaintiffs Complaint contains claims for interference and retaliation. However, Plaintiff's interference claim is indistinguishable from her retaliation claim. Plaintiff testified that she asked for and turned in FMLA paperwork to take her leave. (DE 36 at 5). Defendants do not dispute that Plaintiff was eligible for and entitled to leave under the FMLA. (*Id.* at 15). An interference claim arises when "an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act." *Strickland*, 239 F.3d at 1206 (citing 29 U.S.C. § 2615(a)(1)). Since Plaintiff was terminated before her leave under the FMLA would have begun, there is no separate interference claim in this case and I will instead focus on Plaintiff's retaliation claim.

■■■■ "When a plaintiff asserts a claim of retaliation under the FMLA, in the

absence of direct evidence of the employer's intent, we apply the same burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for evaluating Title VII discrimination claims." *Strickland*, 239 F.3d at 1207. In order to state a claim of retaliation, an employee must allege that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment decision; and (3) the decision was causally related to protected activity. *Id.* (citing *Parris v. Miami Herald Publ'g. Co.*, 216 F.3d 1298, 1301 (11th Cir.2000)).

In their Motion, Defendants do not challenge whether Plaintiff has shown a prima facie case of the first two elements for a retaliation claim. Rather, Defendants argue that Plaintiff's retaliation and interference claims fail as a matter of law because Plaintiff has not established that the decision to fire her was causally related to protected activity. Defendants contend that Dr. Rangel and Dr. Brody, who made the decision to terminate Plaintiff, had no knowledge of Plaintiff's request for FMLA leave. (DE 36 at 17).

> In order to establish the requisite "causal link" required as part of a prima facie case, a plaintiff need only establish that the "protected activity and the adverse action were not wholly unrelated." At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action. The defendant's awareness of the protected statement, however, may be established by circumstantial evidence.

*Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir.1993) (citations omitted). When determining whether the requisite "causal link" is present, the Court looks to see what the employer decision makers knew at the time the termination decision was made. *See Brungart v. Bell-South Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir.2000) ("In order to show the [requisite causal link] ..., the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action.") (citing *Goldsmith*, 996 F.2d at 1163). "[I]n a retaliation case, when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation." *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir.2006).

In his Answers to Plaintiff's First Set of Interrogatories, Dr. Rangel states that the decision to terminate Plaintiff was made primarily by him and Dr. Brody although "Cristina Ortega Andrickson and Iris Lemarque were also involved to some degree, but did not make the termination decision." (DE 42–1 at 2). Plaintiff does not offer any direct evidence that Dr. Rangel and/or Dr. Brody were aware that Plaintiff had requested FMLA leave when she was terminated. Rather, Plaintiff relies on the fact that Defendants likely knew she was pregnant at the time they terminated her and the fact that the termination occurred so closely to the time she was to take her leave to satisfy the causal link requirement of her prima facie case. I find that this is not sufficient evidence to create a genuine issue of material fact as to whether Plaintiff's termination was causally related to her request to take leave. First, Dr. Rangel and Dr. Brody stated, and Plaintiff does not offer any evidence to contest, that they decided to terminate Plaintiff in March 2011 after discovering Plaintiff's third incidence of billing fraud. (DE 36 at 10; DE 36–11 at 18). While it is unclear whether Dr. Rangel and Dr. Brody knew that Plaintiff was pregnant at the time they made the decision to terminate Plaintiff, both testified

that they were unaware of her requesting FMLA leave at that time, or even at the time that they actually terminated her in May. (DE 36–11 at 22; DE 36–13 at 27). Plaintiff testified that she told Lorraine Banks, her office manager, in February 2011 that she was pregnant and would be taking leave under the FMLA around July 1, 2011. (DE 36–12 at 10). However, there is no evidence suggesting that Ms. Banks participated in the decision to terminate Plaintiff, nor is there is any evidence suggesting that Ms. Banks told Dr. Rangel, Dr. Brody, or any of the other decision makers about her leave request. Although Plaintiff urges that Defendants' knowledge of her pregnancy is sufficient to show their knowledge of her leave request, I find that the two are not synonymous. *See Martinez v. Mercedes Home Realty, Inc.*, Case No. 04–cv–1467, 2005 WL 2647884 at *6 (M.D.Fla. Oct. 17, 2005) (finding that giving notice of pregnancy, without requesting leave, is not sufficient to establish a "causal link" under the FMLA).

 Furthermore, I find that the close proximity between Plaintiff's termination and her expected leave date are not sufficient to demonstrate a genuine issue of material fact as to whether the requisite causal link is present. "Close temporal proximity between protected conduct and an adverse employment action is generally 'sufficient circumstantial evidence to create a genuine issue of material fact of a casual connection.' [However, a]n exception to this rule applies where there is 'unrebut-

ted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct' . . . ." *Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1298 (11th Cir.2006). As stated previously, Dr. Rangel and Dr. Brody both testified that they did not know that Plaintiff had requested FMLA leave and Plaintiff has not offered any evidence suggesting that anyone else who was involved in the decision to terminate Plaintiff was aware of her FMLA leave request. Accordingly, I find that the close proximity between Dr. Rangel and Dr. Brody's decision to terminate Plaintiff and her estimated leave date is not sufficient to create a genuine issue of material fact regarding whether the requisite "causal link" is present.[1]

## IV. CONCLUSION

Having determined that there is no genuine issue of material fact for trial concerning Defendants' knowledge of Plaintiff's FMLA leave request and thus Plaintiff has failed to state a *prima face* case for retaliation under the FMLA, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion (DE 36) is GRANTED. This case is DISMISSED WITH PREJUDICE. All pending motions are DENIED AS MOOT. The Clerk shall CLOSE THIS CASE.

---

1. Even if I found that the general rule should apply in this case, the close proximity in time would be insufficient to establish a causal link. First, the decision to terminate Plaintiff was made in March 2011 and her expected leave date was not until July 2011, over four months away. Second, close proximity alone is not sufficient to establish a prima facie case of the third element. Rather, "the close proximity merely buttresses other evidence (direct

or circumstantial) in the case indicating that the decision maker had notice of the protected activity." *Strickland*, 239 F.3d at 1208 n. 10. Since there is no other evidence here indicating that Dr. Rangel and Dr. Brody had notice of Plaintiff's request to take leave, close proximity alone would not be sufficient to create a genuine issue of material fact regarding the third element.